## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHASE SCHACHENMAN and JASON BUNDRICK, on behalf of themselves and all others similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> AVIS RENT A CAR SYSTEM, LLC, <br><br> *Defendant*. | No. 2:24-CV-09506 <br><br> **CLASS ACTION COMPLAINT** <br><br> JURY TRIAL DEMANDED |

Plaintiffs, Chase Schachenman ("Plaintiff Schachenman") and Jason Bundrick ("Plaintiff Bundrick") (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, allege the following against Defendant, Avis Rent A Car System, LLC ("Avis" or "Defendant"), upon personal knowledge as to their own acts and based upon their investigation, their counsel's investigation, and information and belief as to all other matters.

## <u>INTRODUCTION</u>

1.    This is a data breach class action against Defendant on behalf of individuals whose personally identifying information ("PII") was compromised by a data breach ("Data Breach") of Defendant's systems at least as early as August 3, 2024.

2.      Avis is a major global rental car company which collects, stores, and maintains significant PII, including driving license numbers and financial billing information, from millions of customers as a precondition for doing business with Defendant.

3.      On September 4, 2024, Avis announced that its systems had been breached and that hackers[1] had exposed the personal information of roughly 300,000 individuals.

4.      According to reports, the breached data includes names, mailing addresses, email addresses, telephone numbers, dates of birth, credit card numbers (with expiration dates) and driver's license numbers.[2]

5.      Although Defendant was breached on as early as August 3, 2024, and discovered the breach as early as August 5, 2024, it did not begin the process of notifying impacted customers of the Data Breach for nearly a month.

6.      Avis is a major global rental car company and understands the high value of the breached information to outside parties, including criminal organizations.  Defendant knew, or should have known, about the risk to the data

---

[1]Note that while some news reports indicate that the breach was caused by hackers, at least one report made by Avis to the Maine Attorney General described the breach as "Insider wrongdoing."

[2]https://techhq.com/2024/09/avis-car-rental-data-breach-affects-nearly-300000-users/ (last accessed September 24, 2024).

it stored and processed, and the importance of adequate security measures in the face of increasing threats.

7.    Despite knowing the risks, Defendant did not implement adequate security measures to protect its customers' PII.

8.    The failure to implement adequate data security measures in the face of the obvious threat profile made such a data breach entirely foreseeable.  But for Defendant's failure to secure and encrypt its servers and appropriately isolate and compartmentalize the data of its customers, this breach would not have occurred.

9.    Plaintiffs and the Class (defined below) have been harmed because they are at immediate risk of having their PII used against them, including by means of fraud and identity theft.  Plaintiffs also suffered harm in the loss of their PII and the high risk of sale of this data on the dark web, which may have already occurred.

10.    Under these circumstances, Defendant unreasonably delayed notifying victims about the Data Breach.  This delay in notification to victims of the breach is unacceptable and directly harms victims of the breach, including Plaintiffs, by increasing their risk of harm, creating uncertainty about the extent to which they have been damaged and the need to engage in various services and efforts in the wake of the Data Breach including, but not limited to, examining whether their PII has been sold on the dark web, taking measures to protect

against identity theft crimes, spending money and time on credit monitoring and identity theft insurance, examining bank statements, initiating fraud alerts, and other efforts at mitigating consequential harms.

11.    Plaintiffs, individually and on behalf of a nationwide Class, allege claims of (1) Negligence and Negligence *Per Se,* (2) Breach of Implied Contract, and (3) Unjust Enrichment.  Plaintiffs also seek declaratory and injunctive relief. Plaintiffs ask the Court to compel Defendant to adopt reasonable information security practices to secure the sensitive PII that it collects and stores in its databases and to grant such other relief as the Court deems just and proper.

## PARTIES

### *Plaintiffs*

12.    Plaintiff Schachenman is a resident of Saint Paul, Minnesota. He used Defendant's rental car service and received a Data Breach notification letter from Avis dated September 4, 2024 concerning this breach.

13.    Plaintiff Bundrick is a resident of West Columbia, South Carolina. He used Defendant's rental car service and received a data breach notification letter from Avis dated September 4, 2024 concerning this breach.

### *Defendant*

14.    On its corporate profile, Defendant advertises itself as "one of the world's best-known car rental brands with approximately 5,500 locations in more

than 165 countries."[3] Its global headquarters is located at 379 Interpace Parkway, Parsippany, NJ 07054.

## JURISDICTION AND VENUE

15.    This Court has subject matter jurisdiction and diversity jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).  The amount in controversy exceeds $5 million, exclusive of interest and costs.  The Class contains more than 100 members (indeed, it likely contains hundreds of thousands of members), and many of these members, including Plaintiffs, have citizenship diverse from Defendant.  At least one member of the proposed Class is diverse from at least one member of Defendant.

16.    This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because all claims alleged herein form part of the case in controversy.

17.    The exercise of personal jurisdiction over Defendant is appropriate because it regularly transacts business in this District and indeed has its principal place of business in this District.

18.    Venue is proper in this District under 28 U.S.C. §§ 1391(a)(2), 1391(b)(2), and 1391(c)(2) because a substantial part of the events giving rise to the claims emanated from activities within this District.  Specifically, Avis is

---

[3]https://www.avis.com/en/about-avis/company-information/corporate-facts (last accessed September 24, 2024).

headquartered in Parsippany, New Jersey, and its breached systems, representations, decision making, and security practices emanated from this District.

## FACTUAL ALLEGATIONS

### I.    Background

19.    Defendant is a major global rental car company.

20.    Plaintiffs and members of the Class are former or current customers of Defendant who used its services.

21.    In order to utilize Defendant's services, including car rental services, Plaintiffs and members of the Class were required to provide all or part of the following information to Avis in its regular course of business:

- Full name and mailing or personal address;

- Email address;

- Telephone number;

- Driver's license;

- Date of birth; and

- Credit card type, number, and expiration date.

22.    The above information is highly sensitive PII and is especially valuable to criminals because it can be used to commit serious identity theft and fraud crimes.

6

## II.    The Breach

23.    At least as early as August 3, 2024, Avis suffered a massive Data Breach of its systems, which it became aware of at least as early as August 5, 2024.  The breach continued until at least August 6, 2024.

24.    The Data Breach impacted nearly 300,000 individuals, including Plaintiffs.  The breached information includes, but is not limited to, full name, date of birth, telephone number, driver's license number, and credit card name, number and expiration date.

25.    On September 4, 2024, approximately one month after the initial Data Breach occurred, Avis started sending out Data Breach notification letters to its customers, approximately one month after the initial breach occurred.

## III.    Defendant Failed to Comply with Reasonable Cybersecurity Standards

26.    At all times relevant to this Complaint, Defendant knew or should have known the significance and necessity of safeguarding its customers' PII and the foreseeable consequences of such a Data Breach.  Defendant knew or should have known that because it collected and maintained the PII of its customers, a significant number of customers would be harmed by a breach of its systems.  Defendant further knew - due to the nature of its business practices as global rental car company - that it was entrusted with was highly valuable personal information, including PII (including drivers' licenses and billing information).

Defendant knew that a data breach could potentially result in the release of deeply personal, sensitive, and costly information about hundreds of thousands of its current and former customers.

27.    Because PII is so sensitive and cyberattacks have become a rising threat, the Federal Trade Commission ("FTC") has issued numerous guidelines for businesses holding sensitive PII and emphasized the importance of adequate data security practices.  The FTC also stresses that appropriately safeguarding PII held by businesses should be factored into all business-related decision making.

28.    An FTC Publication, titled "Protecting Personal Information: A Guide for Business," lays out fundamental data security principles and standard practices that businesses should implement to protect PII.[4] The guidelines highlight that businesses should (a) protect the personal customer information they collect and store; (b) properly dispose of personal information that is no longer needed; (c) encrypt information stored on their computer networks; (d) understand their network's vulnerabilities; and (e) implement policies to correct security problems.

29.    The FTC also recommends that businesses use an intrusion detection system, monitor all incoming traffic to the networks for any unusual activity,

---

[4]https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business (last accessed September 25, 2024).

monitor for large amounts of data being transmitted from their systems, and have a response plan prepared in the event of a breach.

30.     The FTC also recommends that businesses limit access to sensitive PII, require complex passwords to be used on their networks, use industry-tested methods for security, monitor for suspicious activity on the networks, and verify that third-party service providers have implemented reasonable security measures.

31.     Businesses that do not comply with the basic protection of sensitive PII face enforcement actions brought by the FTC.  Failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data is an unfair act or practice prohibited pursuant to Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45 (the "FTC Act").

32.     Many states' unfair and deceptive trade practices statutes are similar to the FTC Act, and many states adopt the FTC's interpretations of what constitutes an unfair or deceptive trade practice.

33.     Defendant knew or should have known of its obligation to implement appropriate measures to protect its customers' PII, but failed to comply with the FTC's basic guidelines and other industry best practices, including the minimum

standards set by the National Institute of Standards and Technology Cybersecurity Framework Version 1.1.[5]

34.    Defendant's failure to employ reasonable measures to adequately safeguard against unauthorized access to customers' PII constitutes an unfair act or practice as prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45, as well as by state statutory analogs.

35.    Defendant failed to use reasonable care in maintaining the privacy and security of Plaintiffs' and Class members' PII.  If Defendant had implemented adequate security measures, cybercriminals could never have accessed the PII of Plaintiffs and Class members, and the Data Breach would have either been prevented in its entirety or have been much smaller in scope.  For example, if Defendant had implemented adequate monitoring systems, it would have noticed and halted the hacking attempt on August 3 or have been able to stop the breach on August 5, rather than only belatedly and purportedly halting the breach on August 6.  Moreover, the hackers obtained customers' PII, including credit card information and drivers' licenses for hundreds of thousands of customers.  Under normal circumstances, no single individual should have access to all this

---

[5] https://nvlpubs.nist.gov/nistpubs/cswp/nist.cswp.04162018.pdf (last accessed September 25, 2024).

information, and adequate monitoring should have flagged and stopped the exfiltrated data much earlier.

36.    Once Defendant became aware of the Data Breach, it could have acted far faster and more aggressively in responding to the breach and in assisting victims in redressing harms, including sending notifications to those impacted. Defendant stated in its Data Breach letter that it had identified specific individuals, including Plaintiffs, who were harmed by the breach on August 14, 2024. However, it did not begin to notify impacted parties until September 4, 2024, *nearly three weeks later*.

37.    PII is of high value to criminals.  Sensitive information can often be sold on the dark web, with personal information being offered at a price ranging from $40 to $200 and bank details with prices from $50 to $200.[6] The Data Breach exposed PII that is both valuable and highly coveted on underground markets because it can be used to commit identity theft and financial fraud. Identity thieves use such PII to, among other things, gain access to bank accounts, social media accounts, and credit cards  Identity thieves can also use PII to open new financial accounts, open new utility accounts, obtain medical treatment using

---

[6]*Your personal data is for sale on the dark web. Here's how much it costs*, Digital Trends, Oct. 16, 2019, available at: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last accessed September 25, 2024).

victims' health insurance, file fraudulent tax returns, obtain government benefits, obtain government identification cards, or create "synthetic identities." Additionally, identity thieves often wait significant amounts of time—months or even years—to use the PII obtained in data breaches because victims often become less vigilant in monitoring their accounts as time passes, therefore making the PII easier to use without detection.  The one year of identity monitoring services offered is not sufficient.  Given the extraordinary scale of the Data Breach and the potential consequences to Class members, the effects of the Data Breach will linger for years.  These identity thieves will also re-use stolen PII, resulting in victims of one data breach suffering the effects of several cybercrimes from one instance of unauthorized access to their PII.

38.    Victims of data breaches are much more likely to become victims of identity fraud.  Data breach victims who do experience identity theft often spend hundreds of hours fixing the damage caused by identity thieves.[7]  Plaintiffs and members of the Class generally have spent hours on end and considerable time and stress attempting to mitigate the present and future harms caused by the Data Breach.  The U.S. Department of Justice's Bureau of Justice Statistics has

---

[7]https://www.marylandattorneygeneral.gov/ID%20Theft%20Documents/Identitytheft.pdf (last accessed September 24, 2024).

reported that, even if data thieves have not caused financial harm, data breach victims "reported spending an average of about 7 hours clearing up the issues."[8]

39.    Security standards for businesses storing PII commonly include, but are not limited to:

  a.    Maintaining a secure firewall;

  b.    Monitoring for suspicious or unusual traffic on the website;

  c.    Looking for trends in user activity including for unknown or suspicious users;

  d.    Looking at server requests for PII;

  e.    Looking for server requests from VPNs and Tor exit notes;

  f.    Requiring multi-factor authentication before permitting new IP addresses to access user accounts and PII; and

  g.    Structuring a system that includes design and control to limit user access as necessary, including a user's access to the account data and PII of other users.

40.    Defendant styles itself as having "a long history of innovation in the car rental industry" and as being "one of the world's top brands for customer loyalty."  Given Defendant's representations of expertise, it should have been expected to provide adequate security commensurate with the value of the data it utilized.  Defendant had an obligation to provide superior security in light of the sensitivity of the information it administered, which obligation it failed.

---

[8] https://bjs.ojp.gov/content/pub/pdf/vit14.pdf (last accessed September 24, 2024).

## IV.    Plaintiffs' and Class Members' Experiences

41.    To use Defendant's service, Plaintiffs provided sensitive PII, including their full name, address, date of birth, telephone number, email, insurance information, billing information (including credit card number and expiration date), and driver's license.

42.    Plaintiffs have taken reasonable steps to maintain the confidentiality of their PII.  When Defendant accepted Plaintiffs' money and private information in exchange for rental car services, it did so with the implicit understanding it would be required to use its experience and sophistication to keep this information secure and confidential.

43.    As a result of the Data Breach, Plaintiffs were forced to take measures to mitigate the harm, including spending time monitoring credit and financial accounts, researching the Data Breach, and researching and taking steps to prevent and mitigate the likelihood of identity theft.

44.    As a result of the Data Breach, Plaintiffs suffered actual injuries including: (a) damages to and diminution in the value of the PII that they entrusted to Defendant as a condition of receiving its services; (b) loss and invasion of Plaintiffs' privacy; and (c) injuries arising from the increased risk of

fraud and identity theft, including the cost of taking reasonable identity theft

protection measures, which will continue for years, among other injuries.

## CLASS ACTION ALLEGATIONS

45.    Plaintiffs brings this action as a class action pursuant to Rules 23(a)

and 23(b)(1)-(3) of the Federal Rules of Civil Procedure, on behalf of themselves

and a nationwide Class defined as follows:

> **All persons in the United States whose personally identifying information was compromised by the Data Breach announced by Avis in September 2024.**

46.    Excluded from the Class are governmental entities, Defendant, any

entity in which Defendant have a controlling interest, and Defendant's officers,

directors, affiliates, legal representatives, employees, co-conspirators, successors,

subsidiaries, and assigns.  Also excluded from the Nationwide Class are any

judges, justices, or judicial officers presiding over this matter and the members of

their immediate families and judicial staff.

47.    This action is brought and may be properly maintained as a class

action pursuant to Rule 23.  This action satisfies the requirements of Rule 23,

including numerosity, commonality, typicality, adequacy, predominance, and

superiority.

48.    **Numerosity.**  The Class is so numerous that the individual joinder of

all members is impracticable.  While the exact number of Class members is

currently unknown and can only be ascertained through appropriate discovery, Plaintiffs, on information and belief, allege that the Class includes at least hundreds of thousands of members based on Defendant's own representation that information from 299,006 individuals was compromised.[9]

49.    **Commonality.**  Common legal and factual questions exist that predominate over any questions affecting only individual Class members. These common questions, which do not vary among Class members and which may be determined without reference to any Class member's individual circumstances, include, but are not limited to the following:

   a.  Whether Defendant knew or should have known that its systems were vulnerable to unauthorized access;

   b.  Whether Defendant failed to take adequate and reasonable measures to ensure its data systems were protected;

   c.  Whether Defendant failed to take available steps to prevent and stop the breach from happening or mitigating the risk of a long-term breach;

   d.  Whether Defendant unreasonably delayed in notifying Class members of the harm they suffered once the suspicious activity was detected;

   e.  Whether Defendant owed a legal duty to Plaintiffs and Class members to protect their PII;

---

[9] https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/ccfece24-0b9c-4251-a89b-0fd68ecbda12.html (last accessed September 24, 2024).

    f.  Whether Defendant breached any duty to protect the PII of Plaintiffs and Class members by failing to exercise due care in protecting their PII;

    g.  Whether Plaintiffs and Class members are entitled to actual, statutory, or other forms of damages and other monetary relief; and

    h.  Whether Plaintiffs and Class members are entitled to equitable relief, including injunctive relief or restitution.

50.   **Typicality.**  Plaintiffs' claims are typical of other Class members' claims because Plaintiffs and Class members were subjected to the same allegedly unlawful conduct and damaged in the same way.

51.   **Adequacy of Representation.**  Plaintiffs are adequate Class representatives because they are nationwide Class members and their interests do not conflict with the interests of the Class.  Plaintiffs retained counsel who are competent and experienced in class action and data breach litigation.  Plaintiffs and their counsel intend to prosecute this action vigorously for the Class members' benefit and will fairly and adequately protect their interests.

52.   **Predominance and Superiority.**  The nationwide Class can be properly maintained because the above common questions of law and fact predominate over any questions affecting individual Class members.  A class action is also superior to other available methods for the fair and efficient adjudication of this litigation because individual litigation of each Class member's claim is impracticable.  Even if each Class member could afford individual

litigation, the court system could not.  It would be unduly burdensome

if thousands of individual cases were to proceed. Individual litigation also

presents the potential for inconsistent or contradictory judgments, the prospect of

a race to the court house, and the risk of an inequitable allocation of recovery

among those with equally meritorious claims.  Individual litigation would increase

the expense and delay to all parties and the courts because it requires individual

resolution of common legal and factual questions.  By contrast, the class action

device presents far fewer management difficulties and provides the benefit of a

single adjudication, economies of scale, and comprehensive supervision by a

single court.

53.    **Declaratory and Injunctive Relief.**  The prosecution of separate

actions by individual Class members would create a risk of inconsistent or varying

adjudications with respect to individual Class members that would establish

incompatible standards of conduct for Defendant.  Such individual actions would

create a risk of adjudications that would be dispositive of the interests of other

Class members and impair their interests.  Defendant has acted and/or refused to

act on grounds generally applicable to the Class, making final injunctive relief or

corresponding declaratory relief appropriate.

## CLAIMS FOR RELIEF

**COUNT 1**
**Negligence**
**On behalf of Plaintiffs and the Nationwide Class**

54.    Plaintiffs incorporate by reference and reallege each allegation in paragraphs 1-53 as though fully set forth herein.

55.    Plaintiffs were required to provide PII as a precondition for using Defendant's rental car services.  Plaintiffs and Class members entrusted their PII to Defendant with the understanding that it would safeguard their PII.

56.    Defendant did not take reasonable and appropriate safeguards to protect Plaintiffs' and Class members' PII.

57.    Defendant had full knowledge of the sensitivity of the PII that it stored and the types of harm that Plaintiffs and Class members could and would suffer if that PII were wrongfully disclosed.

58.    Avis violated its duty to implement and maintain reasonable security procedures and practices.  That duty includes, among other things, designing, maintaining, and testing Defendant's information security controls sufficiently rigorously to ensure that PII in its possession was adequately secured by, for example, encrypting sensitive personal information, installing effective intrusion detection systems and monitoring mechanisms, using access controls to limit access to sensitive data, and regularly testing for security weaknesses and failures.

Defendant further violated its duty by failing to notify customers of the specific breached data in a timely manner.

59.    Defendant's duty of care arose from, among other things,

    a.    Defendant's exclusive ability (and Class members' inability) to ensure that its systems were sufficient to protect against the foreseeable risk that a data breach could occur;

    b.    Section 5 of the FTC Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, failing to adopt reasonable data security measures; and

    c.    Defendant's common law duties to adopt reasonable data security measures to protect customer PII and to act as a reasonable and prudent person under the same or similar circumstances would act.

60.    Defendant's violation of the FTC Act constitutes negligence per se for purposes of establishing the duty and breach elements of Plaintiffs' negligence claim.  Those statutes were designed to protect a group to which Plaintiffs and the Class belong and to prevent the types of harm that resulted from the Data Breach.

61.    Defendant is a major global rental car company and operates thousands of locations across more than 100 countries.  Defendant had the financial and personnel resources necessary to prevent the Data Breach but, nevertheless, it failed to adopt reasonable data security measures, in breach of the duties it owed to Plaintiffs and Class members.

62. Plaintiffs and Class members were the foreseeable victims of Defendant's inadequate data security. Defendant knew that a breach of its systems could and would cause harm to Plaintiffs and Class members.

63. Defendant's conduct created a foreseeable risk of harm to Plaintiffs and Class members. Its conduct included the failure to adequately mitigate harm through negligently failing to inform victims of the breach of the specific information breached for (as of time of writing) nearly a month after the purported first discovery of the Data Breach.

64. Defendant knew or should have known of the inherent risks in collecting and storing massive amounts of PII, the importance of providing adequate data security for that PII, and the increasing frequency of cyberattacks.

65. Defendant, through its actions and inactions, breached its duty owed to Plaintiffs and Class members by failing to exercise reasonable care in safeguarding their PII while in its possession and control. Defendant breached its duty by, among other things, failing to adopt reasonable data security practices and to adopt reasonable security and notification practices, including monitoring internal systems and sending notifications to affected victims.

66. Avis inadequately safeguarded consumers' PII in breach of standard industry rules, regulations, and best practices at the time of the Data Breach.

67.    But for Defendant's breach of its duty to adequately protect Plaintiffs' and Class members' PII, Plaintiffs' and Class Members' PII would not have been stolen.

68.    There is a temporal and close causal connection between Defendant's failure to implement adequate data security measures and notification practices, the Data Breach, and the harms suffered by Plaintiffs and Class members.

69.    As a result of Defendant's negligence, Plaintiffs and Class members suffered and will continue to suffer the damages alleged herein.

70.    Plaintiffs and Class members are entitled to all forms of monetary compensation set forth herein, including monetary payments to provide adequate identity protection services.  Plaintiffs and Class members are also entitled to the injunctive relief sought herein.

**COUNT 2**
**Breach of Implied Contract**
**On behalf of Plaintiffs and the Nationwide Class**

71.    Plaintiffs incorporate by reference and reallege each allegation in paragraphs 1-53 as though fully set forth herein.

72.    Plaintiffs and Class members entered into an implied contract with Defendant when Defendant accepted custody of their PII.

73.    As part of these transactions, Avis agreed to safeguard and protect the PII of Plaintiffs and Class members and to timely and accurately notify them if their PII was breached or compromised.

74.    Plaintiffs and Class members entered into the implied contracts with the reasonable expectation that Defendant's data security practices and policies were reasonable and consistent with the legal requirements and industry standards. Plaintiffs and Class members believed that Defendant would use part of the monies paid to it under the implied contracts or the monies obtained from the benefits derived from the PII they provided to fund proper and reasonable data security practices.

75.    Plaintiffs and Class members would not have provided and entrusted their PII to Defendant or would have paid less for its products or services in the absence of the implied contract or implied terms between them and Defendant. The safeguarding of the PII of Plaintiffs and Class members was critical to realize the intent of the parties.

76.    Plaintiffs and Class members fully performed their obligations under the implied contracts with Defendant.

77.    Avis breached its implied contracts with Plaintiffs and Class members to protect their PII when it (1) failed to take reasonable steps to use safe and secure systems to protect that information; (2) disclosed that information to

unauthorized third parties; and (3) failed to notify Plaintiffs and Class members of the specific data breached in a reasonably timely manner.

78.     As a direct and proximate result of Defendant's breach of implied contract, Plaintiffs and Class members have been injured and are entitled to damages in an amount to be proven at trial.  Such injuries include one or more of the following: (a) the ongoing, imminent, impending threat of identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; (b) actual identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; (c) loss of the value of their privacy and the confidentiality of the stolen PII; (d) illegal sale of the compromised PII on the black market; (e) mitigation expenses and time spent on credit monitoring, identity theft insurance, and credit freezes and unfreezes; (f) time spent in response to the Data Breach reviewing bank statements, credit card statements, and credit reports, among other related activities; (g) expenses and time spent initiating fraud alerts; (h) decreased credit scores and ratings; (i) lost work time; (j) lost value of their PII; (k) the amount of the actuarial present value of ongoing high-quality identity defense and credit monitoring services made necessary as mitigation measures because of the Defendant's Data Breach; (l) lost benefit of their bargains and overcharges for services or products; (m) nominal and general damages; and (n) other economic and non-economic harm.

79.    As a direct and proximate result of the breach, Plaintiffs and Class members are entitled to relief as set forth herein.

**COUNT 3**
**Unjust Enrichment**
**On behalf of Plaintiffs and the Nationwide Class**

80.    Plaintiffs incorporate by reference and reallege each allegation in paragraphs 1-53 as though fully set forth herein.

81.    This Count is brought in the alternative to Plaintiffs' breach of implied contract count.

82.    Plaintiffs and Class members conferred a monetary benefit on Defendant when they provided it with their PII. In exchange, Defendant should have provided adequate data security for Plaintiffs and Class members.

83.    Defendant knew that Plaintiffs and Class members conferred a benefit on it in the form of their PII as a necessary part of their receiving rental car services.  Defendant appreciated and accepted that benefit, profited from these transactions, and used the PII for business purposes.

84.    Upon information and belief, Defendant funds its data security measures entirely from its general revenue, including payments on behalf of or for the benefit of Plaintiffs and Class members.  As such, a portion of the payments made for the benefit of or on behalf of Plaintiffs and Class members is to be used

to provide a reasonable level of data security, and the amount of the portion of each payment made that is allocated to data security is known to Defendant.

85.    Defendant, however, failed to secure Plaintiffs' and Class members' PII and, therefore, did not provide adequate data security in return for the benefit Plaintiffs and Class members provided it.

86.    Defendant would not be able to carry out an essential function of its regular business without the PII of Plaintiffs and Class members and derived revenue by using it for business purposes.  Plaintiffs and Class members expected that Defendant or anyone in its position would use a portion of that revenue to fund adequate data security practices.

87.    Defendant acquired the PII through inequitable means in that it failed to disclose its inadequate security practices previously alleged.

88.    If Plaintiffs and Class members knew that Avis had not reasonably secured their PII, they would not have allowed their PII to be provided to Defendant.

89.    Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiffs and Class members' PII.  Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant instead calculated to increase its own profit at the expense of Plaintiffs and Class members by utilizing cheaper, ineffective security

measures and diverting those funds to its own profit. Plaintiffs and Class

members, on the other hand, suffered as a direct and proximate result of

Defendant's decision to prioritize its own profits over the requisite security and

the safety of their PII.

90.     Under the principles of equity and good conscience, Defendant

should not be permitted to retain the money wrongfully obtained from Plaintiffs

and Class members because it failed to implement appropriate data management

and security measures that are mandated by industry standards.

91.     Plaintiffs and Class members have no adequate remedy at law.

92.     As a direct and proximate result of Defendant's conduct, Plaintiffs

and Class members have been injured and are entitled to damages in an amount to

be proven at trial. Such injuries include one or more of the following: ongoing,

imminent, impending threat of identity theft crimes, fraud, and other misuse,

resulting in monetary loss and economic harm; actual identity theft crimes, fraud,

and other misuse, resulting in monetary loss and economic harm; loss of the value

of their privacy and the confidentiality of the stolen PII; illegal sale of the

compromised PII on the black market; mitigation expenses and time spent on

credit monitoring, identity theft insurance, and credit freezes and unfreezes; time

spent reviewing bank statements, credit card statements, and credit reports, among

other related activities in response to the Data Breach; expenses and time spent

initiating fraud alerts; decreased credit scores and ratings; lost work time; lost

value of their PII; the amount of the actuarial present value of ongoing, high-

quality identity defense and credit monitoring services made necessary as

mitigation measures because of the Data Breach; the lost benefit of their bargains

and overcharges for services or products; nominal and general damages; and other

economic and non-economic harm.

93.     Defendant should be compelled to disgorge into a common fund or

constructive trust, for the benefit of Plaintiffs and Class members, proceeds that it

unjustly received from them. In the alternative, Defendant should be compelled to

refund the amounts that Plaintiffs and Class members were underpaid by

Defendant.

**COUNT 4**
**Injunctive/Declaratory Relief**
**On behalf of Plaintiffs and the Nationwide Class**

94.     Plaintiffs incorporate by reference and reallege each allegation in

paragraphs 1-53 as though fully set forth herein.

95.     Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this

Court is authorized to enter a judgment declaring the rights and legal relations of

the parties and to grant further necessary relief.  Furthermore, the Court has broad

authority to restrain acts that are tortious and violate the terms of the federal and

state statutes described herein.

96.     Defendant owes a duty of care to Plaintiffs and Class members, which required Defendant to adequately monitor and safeguard Plaintiffs' and Class Members' PII.

97.     Defendant and its officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns still possess the PII belonging to Plaintiffs and Class members.

98.     An actual controversy has arisen in the wake of the Data Breach regarding Plaintiffs' and Class Members' PII and whether Defendant is currently maintaining data security measures adequate to protect Plaintiffs and Class Members from further data breaches that may again compromise their PII. Plaintiffs allege that Defendant's data security measures remain inadequate. Furthermore, Plaintiffs and the Class members continue to suffer injury as a result of the exposure of their PII and the risk remains that further compromises of their PII will occur in the future.

99.     Under its authority pursuant to the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

     a.    Defendant owes a legal duty to secure the PII of Plaintiffs and the Class within its care, custody, and control under the common law, Section 5 of FTC Act;

     b.    Defendant breached its duty to Plaintiffs and the Class by allowing the Data Breach to occur;

    c.    Defendant's existing data monitoring measures do not comply with its obligations and duties of care to provide reasonable security procedures and practices that are appropriate to protect the PII of Plaintiffs and the Class within Defendant's custody, care, and control; and

    d.    Defendant's ongoing breaches of said duties continue to cause harm to Plaintiffs and the Class.

100.    This Court should also issue corresponding prospective injunctive relief requiring Defendant to employ adequate security protocols consistent with industry standards to protect the PII of Plaintiffs and the Class within its custody, care, and control, including the following:

    a.    Order Defendant to provide free lifetime credit monitoring and identity theft insurance to Plaintiffs and Class members;

    b.    Order that, to comply with Defendant's obligations and duties of care, it must implement and maintain reasonable security and monitoring measures, including, but not limited to:

        i.    Engaging third-party security auditors/penetration testers, as well as internal security personnel, to conduct testing, including simulated attacks, penetration tests and audits on Defendant's systems, networks, and servers on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

        ii.    Encrypting and anonymizing the existing PII within its servers, networks, and systems to the extent practicable, and purging all such information which is no longer reasonably necessary for Defendant to provide adequate services;

        iii.    Engaging third-party security auditors and internal personnel to run automated security monitoring;

iv.  Auditing, testing, and training its security personnel regarding any new or modified procedures;

v.  Segmenting its user applications by, among other things, creating firewalls and access controls so that if one area is compromised, hackers cannot gain access to other portions of Defendant's systems, networks, and servers;

vi.  Conducting regular database scanning and security checks; and

vii.  Routinely and continually conducting internal training and education to inform Defendant's internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach.

101.  If an injunction is not issued, Plaintiffs and the Class will suffer irreparable injury and will lack an adequate legal remedy to prevent another data breach or cybersecurity incident.  This risk is real, immediate, and substantial.  If another data breach or cybersecurity incident occurs, Plaintiffs and the Class will not have an adequate remedy at law because monetary relief alone will not compensate them for the serious risks of future harm.

102.  The hardship to Plaintiffs and the Class if an injunction is not issued exceeds the hardship to Defendant if an injunction is issued.  Plaintiffs and the Class will likely be subjected to substantial, continued identity theft and other related damages and or additional data breaches and exposure if an injunction is not issued.  On the other hand, the cost of Defendant's compliance with an injunction requiring reasonable prospective data security measures is relatively

minimal, and Defendant has a preexisting legal obligation to employ such measures.

103.    Issuance of the requested injunction will not disserve the public interest.  To the contrary, such an injunction would benefit the public by preventing a subsequent or larger data breach or cybersecurity incident, thus preventing future injury to Plaintiffs and the Class, as well as other persons whose PII could be further compromised.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the Class set forth herein, respectfully request the following relief:

A.    That the Court certify this action as a class action and appoint Plaintiffs and their counsel to represent the Class;

B.    That the Court grant permanent injunctive relief to prohibit Defendant from continuing to engage in the unlawful acts, omissions, and practices described herein and directing it to adequately safeguard the PII of Plaintiffs and the Class by implementing improved security controls;

C.    That the Court award compensatory, consequential, and general damages, including nominal damages as appropriate, as allowed by law in an amount to be determined at trial;

D.    That the Court award statutory or punitive damages as allowed by law in an amount to be determined at trial;

E.    That the Court order disgorgement and restitution of all earnings, profits, compensation, and benefits received by Defendant as a result of its unlawful acts, omissions, and practices;

F.    That the Court award to Plaintiffs and Class members the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses; and

G.    That the Court award pre- and post-judgment interest at the maximum legal rate and all such other relief as it deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demands a jury trial on all claims so triable.

Dated: September 27, 2024   Respectfully submitted,

James C. Shah
Alec J. Berin
**MILLER SHAH LLP**
1845 Walnut Street, Suite 806
Philadelphia, PA 19103
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: jcshah@millershah.com
   ajberin@millershah.com


**SCHUBERT JONCKHEER & KOLBE LLP**
Amber L. Schubert*
Daniel L.M. Pulgram*
2001 Union St, Ste 200
San Francisco, CA 94123
Telephone: (415)788-4220
Facsimile:  (415) 788-0161
Email: aschubert@sjk.law
   dpulgram@sjk.law

*Pro Hac Vice petition to be filed.

*Counsel for Plaintiffs and
the Proposed Class*